**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,)
)    Case No. 00-8037-CR-HURLEY
)
    Plaintiff,    )    Magistrate Judge Vitunac
vs.    )
)
THOMAS PEARL,    )
)
    Defendant    )
_____/

### DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND MEMORANDUM OF LAW

Defendant, **Thomas Pearl,** through counsel, hereby submits the following factual and legal objections to his Pre-sentence Investigation Report, and the Memorandum of Law in support thereof:

**I.    Factual Objections (listed by paragraph)**

    3.    Defendant disputes that he "willfully" failed to appear at a status hearing on July 12, 2000, but rather that he did not appear because of confusion over the court date and mis-communication by Defendant's prior attorney, Robert Gershman. Defendant had also missed another court date that was set for August 10, 2000, which was set without his knowledge regarding his mental health status. Defendant was arrested at a new job that he had just started. Because of a switch of attorneys, the release from



medical treatment after the suicide attempt, the start of a new job, and miscommunication, Defendant did not appear. Defendant appeared in front of Magistrate Judge Vitunac and was held in pre-trial detention starting August 17, <u>2000.</u> It was established at that hearing that Defendant, because of depression and other factors, was a suicide risk. Defendant did not seek release from pretrial detention at any time thereafter, and always desired to start serving his sentence and seeking psycho-sexual therapy.

9. Defendant adds the following facts: Defendant told agents that he knew was wrong to post pictures, but that he was not sure how the particular newsgroup worked where he posted the pictures.

10. Defendant disputes that he told the agents that there could be as many as 4,000 pictures; rather, Defendant recalls that he stated that there could be as many as 2,000 pictures that were downloaded overnight and while he was away from home.

12. Defendant never admitted to being a cross-dresser. Defendant tried to explain that the five (5) packages of underwear found in the house, which were unopened, were bought for his fiancee's two daughters. The underwear were located in a box with other clothes that had been purchased for his fiancee's daughters, and were ready to be shipped to her. Defendant had a practice of helping his fiancee support her children, as she was attempting to make ends meet with a $20,000 annual income. In the box there were also several non-clothing items, such as toys, electronics, CDs, and the like. The box of clothes were found in a utility closet outside of the apartment in the patio area, not in a bedroom. Defendant does not know why this fact has any

relevance to the charge.

13. Defendant disputes that the group of pictures found on the hard-drives were the "worst ever seen" by the agents. First, Defendant is not sure why this fact is relevant to the case. Second, the agents have indicated in their probable cause affidavits that these particular images have been seen floating around in other cases. Further, Defendant has not been advised that any of the images found on the disk (most of which were never viewed by Defendant) were actually "sadistic" in nature, and certainly such a characterization is highly subjective.

16. Defendant requests that this Court listen to his testimony during the sentencing hearing, as well as the testimony of Dr. Susan LaFehr Hession, regarding the Defendant's background and why he was looking for pornographic images on the Internet. *See also Motion for Downward Departure*, filed under seal.

17. Defendant disputes the assertion that the "sheer number of images found indicates he trafficked in child pornography." Defendant at no time was intending to traffic in pornography, and indeed, the earlier statements reflected in the PSI clearly indicate that Defendant was searching for pictures of himself relating to deeply personal, childhood sexual abuse . Further, Defendant explained that the "sheer number of images" resulted from him joining newsgroups that would automatically download images to his computer, often overnight and outside of his presence. *See* Defendant's legal arguments, *infra*.

19. Defendant disputes that he ever participated in a distribution for the "receipt, or expectation of receipt, of a thing of value." *See* Defendant's legal arguments, *infra*.

3

20. Defendant disputes any actual knowledge of any pictures that portray "sadistic or masochistic conduct or other depictions of violence." Indeed, Defendant reminds the Court that he has not viewed the majority of images seized by the Government, as most of the images were unopened by Defendant. *See* Defendant's legal arguments, *infra*.

37. Defendant recalls his childhood sexual abuse lasting for about 21 months. Defendant not only advised his ex-wife of the abuse as early as 1994, but he also told his long time friend Dan Haker about the abuse. Mr. Haker has written a letter to that effect.

39. Defendant not only plans to live with his sister, but has also made plans to enter into psycho-sexual therapy, which includes support group meetings and other therapy suggested by Dr. Susan LaFehr Hession. *See also Motion for Downward Departure*, filed under seal.

40. Defendant has had a variety of other ailments not listed in this paragraph, including high blood pressure, irregular heart beat during stressful situations, lower back arthritis, and two previous hernia operations resulting in mesh in Defendant's stomach.

41. Probation has relied upon on the report of Dr. Teiss, who visited with Defendant face-to-face one time for only 45 minutes. Prior to that visit, Defendant had visited Dr. Schosheim and Dr. Smith, for a series of mental health issues (not just depression) associated with past childhood sexual abuse. For a complete picture of this treatment and Defendant's mental health issues, please refer to the testimony of Dr. Susan LaFehr Hession and her report. *See Motion for Downward Departure*, filed under

seal.

46. Defendant had a brief job with the Poma Corporation prior to his incarceration in August 2000.

64. Other factors that may warrant a downward departure have been presented in the *Motion for Downward Departure*, filed under seal.

## II. Legal Objections (listed by paragraph)

### A. Base Offense Level

17. The guideline for the offense is found in § 2G2.4(a), which assigns a base level of "15" for the offense. U.S. Probation has cross-referenced the offense, because it allegedly involves trafficking of pornographic material, to § 2G2.2, thereby increasing the base level to "17" and thus allowing for additional enhancements totaling "13" additional levels.

**Defendant's legal argument**: The cross reference, by its plain language, requires that there be an "intent to traffic." By Defendant's own acceptance of responsibility and admissions, there was no intent to traffic in pornographic images of minors; rather, Defendant possessed the items with the intent to find pictures (and hopefully the perpetrators) of crimes against his body in the 1960s when he was a minor. *See the Psycho-Sexual/Psychometric Evaluation by Dr. Susan LaFehr Hession*, which details the sexual abuse. Thus, Defendant first argues that "intent" is a crucial element to be established by the Government before the cross-reference to § 2G2.2 may be applied. *See U.S. v. Saylor*, 959 F.2d 198 (11th Cir. 1992) (two level enhancement should not apply where Defendant did not intend to receive material involving prepubescent children); *U.S. v. Tucker*, 136 F.3d 763 (11th Cir. 1998) (intent is necessary requirement of four level enhancement under Sentencing Guidelines

for sexual exploitation offense involving material that portrays minors involved in sadistic, masochistic, or other violent acts); *U.S. v. Kemmish*, 120 F.3d 937 (9th Cir. 1997) (to find that enhancement for sexual abuse or exploitation of minors applies under § 2G2.2(b)(4), the defendant must be *directly* involved in such sexual abuse or exploitation); *U.S. v. Cole*, 61 F.3d 24 (11th Cir. 1995) ("intent" to commit acts, for purposes of sentencing enhancements, depends on actions of defendant; defendant who specifically order tape of 12 to 14 year olds, but who received tapes of minors under the age of 12, did not knowingly receiving tape of minors under age of 12, thereby precluding enhancement under § 2G2.2(b)(1)).

In *U.S. v. Crandon*, 173 F.3d 122 (3d Cir. 999), the Third Circuit held that a district court erred in applying the §2G2.2 cross reference without conducting any actual examination into the defendant's purpose in committing the crime. In that case, the defendant contended that his purpose in taking 48 photographs of a 14 year old girl was to memorialize his love for the girl, rather than the photographing of sexually explicit conduct. The Third Circuit noted that, whether such an assertion was believed or not, some inquiry should have been made into the defendant's purpose so that the district court could make an informed assessment of the applicability of the cross-reference. The court noted that the Government cannot simply say "the photo speaks for itself and the defendant" and give no import to the defendant's purpose in taking the photographs. Indeed, the court noted that in *Morisette v. United States*, 342 U.S. 246, 250-63 (1952), the U.S. Supreme Court held that there is a presumption against strict liability in criminal law. Accordingly, under this analysis, it is "critically important to be certain that the defendant's purpose was, in fact," to traffic in pornographic photographs in order for the cross-reference to apply.

6

Compare *U.S. v. Horn*, 187 F.3d 781 (8th Cir. 1999), where the Eighth Circuit held that the trafficking cross reference would apply because the defendant had a memo book containing information about tapes that he sent to others, and because there was evidence that he had bartered the tapes with another person. Thus, the court held that bartering or exchanging is a form of "trafficking." There was no such exchanging or bartering in this case. The Eighth Circuit joined other circuits in holding that the usual meaning of the word "distribution" in §2G2.2(b)(2) is not normally limited to situations for pecuniary gain. The court noted that "the purpose of the enhancement for distribution . . . is to increase the sentence of those defendants who did not merely receive child pornography but also disseminated it." In this case, Defendant never sold or bartered photographs, and at best, downloaded a large number of photographs because of a desire to find photographs of himself. Further, the sending of the picture via the newsgroup was, at best, because of a desire not to disseminate pornography, but to discover if he could find photographs of himself. Accordingly, Defendant requests that the proper base offense level is found at § 2G2.4(a), because there is no evidence that he intended to be a distributor or trafficker of child pornography, as required for the cross reference to §2G2.2.

### Section 2G2.4(a) Should Apply to the Facts of this Case

It should be noted that § 2G2.4(a) does, in fact, contemplate situations where there may be an applicable offense involving a large number of visual depictions without cross reference to §2G2.2. For example, there is a two level increase for possession of ten or more "books, magazines, periodicals, films, video tapes, or other items." § 2G2.4(b)(2). More importantly, the Commentary (Application Notes) to §2G2.4 discusses the possibility of an upward departure for an offense that "involved a large number of visual depictions." Clearly, then, the Sentencing Commission has

contemplated a situation under §2G2.4 where a defendant may have downloaded a large quantity of images, but is not a trafficker simply because of that large number of images.

### The Plea Agreement Contemplates that Defendant is not a Trafficker

The Government and Defendant negotiated the following terms in paragraph 8 of the Plea Agreement: "The Government agrees to recommend that the Court find that §2G2.4(b)(2) of the Sentencing Guidelines does not apply to this case, that is, that the Court find that the offense involved possessing less than 10 books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor." Therefore, by the Government's own concession, and by joint agreement, Defendant should not be considered a "trafficker" because of the mere number of images on the hard-drives – the Government has acknowledged that the offense pertains to less than 10 items containing visual depictions. Rather, this Court should find that Defendant bargained for the acknowledgment that his offense was not subject to enhancement under §2G2.4(b)(2), and that such an acknowledgment also reflects that Defendant was not a "trafficker" as that term is applied when cross-referencing this case to §2G2.2 instead of §2G2.4. Further, the mere acknowledgment of the §2G2.4(b)(2) enhancement in the Plea Agreement is a strong reflection of the parties' belief (especially the Government's position) that §2G2.4 was the applicable base offense guideline, instead of §2G2.2, which is not subject to the §2G2.4(b)(2) enhancement.

**B.    Specific Offense Characteristics**

18 . . . **§ 2G2.2(b)(1)** allows for a 2 level increase if the material involved a prepubescent minor or a minor under the age of 12 years. Defendant argues that this enhancement should not be applied because §2G2.2 is the improper base level offense guideline. Should this Court determine that §2G2.4 is the proper base level offense guideline, then Defendant could not object to any

such enhancement under §2G2.4.

19 . . . **§ 2G2.2(b)(2)(B)** allows for a 5 level increase if the distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. In *U.S. v. Laney*, 189 F.3d 954 (9th Cir. 1999), the Ninth Circuit held that the word "distribution" pertaining to the §2G2.2(b)(2) enhancement applies to child pornography transactions that are entered into for pecuniary gain. The *Laney* court noted that the overall punishment scheme laid out in § 2G2.2 shows "that § 2G2.2(b)(2) targets those who derive material benefit from their exploitation of children, such as commercial traffickers in child pornography." *Laney,* 189 F.3d at 960. Hence, the Ninth Circuit noted that if simple delivery could trigger an enhancement, then all persons (other than those who merely received child pornography) would qualify automatically for the five level increase under § 2G2.2(b)(4). *Id.* The Ninth Circuit noted that "the most coherent interpretation of § 2G2.2 assigns a base level of 15 to all criminals who send and receive any amount of child pornography for any reason, while visiting a particularly heavy punishment upon those who profit from the exploitation of children." *Id.* at 961.

Subsequent to the decision in *Laney*, Amendment 592 was passed, however it was effective November 1, 2000, which is *after* the time of the incidents in this case. Sentencing Guidelines Manual, Appendix C, pp. 1167-89. Accordingly, because the Amendment is more rigid in its application of "pecuniary" vs. "non pecuniary" gain, the revised § 2G2.2(b)(2) enhancement should not apply to Defendant. Rather, this Court should look to the pre Amendment 592 version of the enhancement, which requires "pecuniary" gain. Under that standard, it is clear that Defendant should not receive this "5" level enhancement as there is absolutely no evidence of a desire for pecuniary gain (or any gain) on the part of Defendant.

20 . . . **§ 2G2.2(b)(3)** allows for a 4 level increase if the offense involved material that portrays "sadistic or masochistic conduct or other depictions of violence." Defendant concedes that the term "sadistic" is loosely applied to a variety of images. However, as to the particular count for which Defendant entered a guilty plea (Count 10), Defendant is unaware of any particular "sadistic" images. Defendant will note that he did not view many of the images downloaded to his disk, but will concede that some of those images most likely include "sadistic" images by the very nature of the newsgroup(s) involved. Counsel for Defendant has viewed some of the images, but did not view "sadistic" images as that term is commonly applied. If this Court finds that all images involved (outside of Count 10) are relevant conduct (or relevant images) for purposes of this 4 level increase, then Defendant will concede that there may be sadistic images. Indeed, Defendant was looking for such sadistic images to determine if he was the person subject to sexual abuse, which can be fairly characterized as "sadistic or masochistic conduct or other depictions of violence." As noted in *U.S. v. Turchen*, No. 98-2718 (7th Cir. August 11, 1999), sadistic perversion involves "gratification . . . obtained through cruelty" and masochism is "abnormal sexual pleasure in . . . being abused or dominated."

21 . . . **§ 2G2.2(b)(5)** allows for a 2 level increase if a computer was used for the transmission of the material or a notice or advertisement of the material. Defendant argues that this enhancement should not be applied because §2G2.2 is the improper base level offense guideline. Should this Court determine that §2G2.4 is the proper base level offense guideline, then Defendant could not object to any "computer" enhancement under §2G2.4(b).

C.  **Total Offense Level**

28. Defendant argues that the total offense level, instead of "27," should be no greater than "16" because of the factual disputes and legal arguments, *supra*.

III. **Factors Warranting a Departure Pursuant to Either § 5K1.1 or § 5K2.0**

Defendant, through counsel, has submitted a separate motion for downward departure and memorandum of law. Because of the sensitive nature of the facts contained therein, Defendant has filed that motion under seal, along with the accompanying exhibits, consisting of letters, psycho sexual/psychometric evaluations by Dr. Susan LeFehr Hession, and other pertinent data relating to Defendant's downward departure motion.

**WHEREFORE**, Defendant requests that this Court take notice of the aforementioned Objections.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to: Bruce Rhinehart, Esq., Assistant United States Attorney, 500 Australian Avenue South, Suite 400, West Palm Beach, FL 33401, and Patricia A. Borah, U.S. Probation, by U.S. Mail / hand-delivery / facsimile, on this 15 day of August, 2001.

Respectfully submitted,

VALENTIN RODRIGUEZ, ESQ.
Valentin Rodriguez, P.A.
318 Ninth Street
West Palm Beach, FL 33401
(561) 832-7510
(561) 514-0610 (facsimile)
Fla Bar No. 047661
Counsel for Defendant

11